1  LATHAM & WATKINS LLP
   Michele D. Johnson (Bar No. 198298)
2  Jordan D. Cook (Bar No. 293394)
   650 Town Center Drive, 20th Floor
3  Costa Mesa, CA 92626-1925
   T: (714) 540-1235 / F: (714) 755-8290
4  michele.johnson@lw.com
   jordan.cook@lw.com
5
   Colleen C. Smith (Bar No. 231216)
6  12670 High Bluff Drive
   San Diego, California 92130
7  T: (858) 523-5400 / F: (858) 523-5450
   colleen.smith@lw.com
8
9  *Attorneys for Plaintiff Masimo Corporation*

10
                  **UNITED STATES DISTRICT COURT**
11
                  **CENTRAL DISTRICT OF CALIFORNIA**
12

13  MASIMO CORPORATION                    Civil Action No. 8:24-cv-01568-JVS-JDE
14              Plaintiff,
                                          **PLAINTIFF'S MEMORANDUM OF**
15       v.                               **POINTS & AUTHORITIES IN**
                                          **SUPPORT OF MOTION FOR**
16  POLITAN CAPITAL                       **PRELIMINARY INJUNCTION**
    MANAGEMENT LP, POLITAN
17  CAPITAL MANAGEMENT GP LLC,
    POLITAN CAPITAL PARTNERS GP           Hearing Date:    September 9, 2024
18  LLC, POLITAN CAPITAL NY LLC,          Time:            1:30 PM
    POLITAN INTERMEDIATE LTD.,            Courtroom:       10C
19  POLITAN CAPITAL PARTNERS              Honorable James V. Selna
    MASTER FUND LP, POLITAN
20  CAPITAL PARTNERS LP, POLITAN
    CAPITAL OFFSHORE PARTNERS
21  LP, QUENTIN KOFFEY, MICHELLE
    BRENNAN, MATTHEW HALL,
22  AARON KAPITO, WILLIAM
    JELLISON, DARLENE SOLOMON,
23
24              Defendant(s).
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................ 1

II.  STATEMENT OF FACTS ............................................................................. 2

    A.  Masimo and the First Proxy Fight With Politan .................................. 2

    B.  Politan Directors Refuse to Fulfill Their Duties and Sabotage Value-Maximizing Plans ........................................................ 3

    C.  Defendants Launch Second Proxy Contest Through False and Misleading Proxy Materials .......................................................... 6

III.  PROCEDURAL HISTORY ........................................................................... 9

IV.  ARGUMENT ............................................................................................... 10

    A.  Masimo Is Likely to Succeed on the Merits ...................................... 10

    B.  Masimo Will Suffer Irreparable Harm Absent a Preliminary Injunction .......................................................................... 19

    C.  The Balance of Equities Favors Masimo ........................................... 21

    D.  A Preliminary Injunction Serves the Public Interest ......................... 21

    E.  No Security Should Be Required for the Preliminary Injunction .............................................................................................. 21

V.  CONCLUSION ............................................................................................. 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agranoff v. Miller*,
791 A.2d 880 (Del. Ch. 2001) ......................................................................... 8

*Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*,
2014 WL 5604539 (C.D. Cal. Nov. 4, 2014) ...................................... 11, 19, 21

*Ariz. Dream Act Coal. v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) ...................................................................... 19

*Beck v. Dobrowski*,
559 F.3d 680 (7th Cir. 2009) ........................................................................ 18

*Bender v. Jordan*,
439 F. Supp. 2d 139 (D.C. Cir. July 21, 2006) ............................................. 20

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) ........................................................................ 19

*Conn. Gen. Life Ins. v. New Images of Beverly Hills*,
321 F.3d 878 (9th Cir. 2003) ........................................................................ 22

*Diaz v. Brewer*,
656 F.3d 1008 (9th Cir. 2011) ...................................................................... 22

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021) .............................................. 17

*In re Maxim Integrated Prods., Inc., Deriv. Litig.*,
574 F. Supp. 2d 1046 (N.D. Cal. 2008) ........................................................ 17

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
148 F. Supp. 2d 1141 (D. Kan. 2001) ........................................................... 21

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ...................................................................................... 10

*Mind Med. (MindMed) Inc. v. Freeman*,
2024 WL 729260 (S.D.N.Y. Feb. 22, 2024) ............................................ 11, 12

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

*MONY Grp., Inc. v. Highfields Cap. Mgmt., L.P.*,
  368 F.3d 138 (2d Cir. 2004) ................................................................ 20

*Piper v. Christ–Craft Indus.*,
  430 U.S. 1 (1977) .......................................................................... 2, 19

*Ret. Sys. v. Jobs*,
  593 F.3d 1018 (9th Cir. 2010) (*overruled on other grounds by
  Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012)) ................ 10

*SEC v. Dain Rauscher, Inc.*,
  254 F.3d 852 (9th Cir. 2001) .............................................................. 18

*Taseko Mines Ltd. v. Raging River Cap.*,
  185 F. Supp. 3d 87 (D.D.C. 2016) ............................................... 19, 21

*Va. Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991) ........................................................................ 17

*Vasquez v. Masimo Corp.*,
  No. 3:23-cv01546-L-DEB (S.D. Cal.) ................................................ 8

*Winter v. Nat. Res. Def. Council*,
  555 U.S. 7 (2008) ................................................................. 10, 19, 21

**RULES**

Fed. R. Civ. P. 65(c) ............................................................................. 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

## I.    INTRODUCTION

Masimo stockholders face a monumental decision in just two months: should Masimo's independent board, led by the Company's inspirational founder, Chairman, and CEO, Joe Kiani, run the Company or should stockholders allow Politan Capital Management LP ("Politan") and its avaricious founder and activist investor, Quentin Koffey, to take full control of the Board with only 9% ownership of Masimo.  Under the federal securities laws, the stockholders must be allowed to make that decision based on truthful information and facts, not misrepresentations. Koffey and Politan, however, have made several misleading statements in their SEC filings and other public forums to turn the stockholders against the Mr. Kiani and the non-Politan Board.  This is all part of a multi-year plan to gain control of Masimo on false pretenses *while depriving Masimo's stockholders a valuable control premium* (a premium often valued at an additional 20%-40% that would otherwise go to all of Masimo's stockholders).  If Masimo stockholders vote in the upcoming annual meeting to support Politan's two new director nominees based on the misrepresentations made to date, Koffey and Politan will have achieved their goal.

Court intervention is necessary to prevent Koffey and Politan from taking control of Masimo based on several false statements and material omissions, including by misleading Masimo stockholders about potential strategic transactions that had the potential to enrich all stockholders (not just Koffey, who will reap the benefits of taking control for free), and Koffey's collaboration with other lawyers in support of legal claims against Masimo's Board and its interests in violation of his fiduciary duties.  If Defendants mislead Masimo's stockholders into casting an uninformed vote at the Annual Meeting, Masimo and its stockholders will be irreparably harmed as the Company is turned over to a dissident stockholder.  At that point, Koffey and Politan will be empowered to undertake all manner of corporate actions that cannot be unwound.   This is exactly why the Supreme Court

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

has instructed that "in corporate control contests the stage of preliminary injunctive relief, rather than post-contest lawsuits, is the time when relief can best be given." *Piper v. Christ–Craft Indus.*, 430 U.S. 1, 42 (1977). The relief Masimo seeks is simple—an order enjoining Koffey and Politan from voting any proxies they solicited until they correct their false statements.

## II. STATEMENT OF FACTS

### A. Masimo and the First Proxy Fight With Politan

Since Mr. Kiani founded Masimo in his garage in 1989, it has grown into a leading health technology and consumer electronics company that employs nearly 8,000 people in California and around the world, generating $2 billion in revenues per year. Compl. ¶ 3. Masimo manufactures life-saving patient monitoring devices and technologies, including non-invasive sensors, patient management tools, and telehealth platforms. *Id.*

Koffey, in contrast, is a self-described "veteran activist" with no experience running a healthcare company. *Id.* ¶ 55. Koffey has never held a senior management position at any medical or consumer technology company (or any public company), has no prior investment experience in the medical device industry, and had no public company board experience before joining Masimo's Board in 2023. *Id.* ¶ 5. Instead, Koffey and Politan have launched successful proxy contests against Centene Corporation and Azenta Life Sciences, both of which have underperformed the S&P 500 since. *Id.*

In 2022, Koffey and Politan set their sights on Masimo, surreptitiously acquiring a stake of over 8% and demanding representation on Masimo's Board. *Id.* ¶ 4. Masimo was rightfully concerned, given Koffey's (i) refusal to disclose his intentions and backers and (ii) record of value destruction at his target companies. *Id.* ¶ 5. When Masimo refused Koffey's demand, he vowed to "wage war" on Masimo and Mr. Kiani. *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

In 2023, Politan nominated Koffey and Brennan to fill the two seats up for reelection. *Id.* ¶ 6. Koffey represented to Masimo's stockholders and privately to Masimo that he had no intention of trying to take control of Masimo and simply wanted to work with Mr. Kiani. *Id.* Based on these and other misstatements, Koffey and Brennan were elected. *Id.* ¶ 7. And while Koffey represented to Masimo and its stockholders that he would stop there, he did not. *Id.*

**B.    Politan Directors Refuse to Fulfill Their Duties and Sabotage Value-Maximizing Plans**

The Board and Masimo management welcomed Koffey and Brennan to the Board, including through an extensive onboarding process consisting of thousands of pages of historical Board materials, financials, and Company policies, full access to Masimo's key executives, and multiple meetings with Masimo management and its outside advisors. *See id.* ¶¶ 68-69. They were updated about the Board's decision to delegate authority to management to retain a financial advisor to explore strategic options available to Masimo. *Id.* ¶¶ 204. Koffey and Brennan, as Board members, also received regular quarterly updates from Masimo's CEO, CFO, and General Counsel. *See id.* ¶ 71. As a member of the Audit Committee, Koffey routinely met with Masimo's independent auditor and Masimo management team and had a chance to ask questions about any aspects of Masimo's financials. *Id.* ¶ 72.

But little did Mr. Kiani, the rest of the Board, and Masimo management know that Koffey and Brennan had no intention of fulfilling their duties as directors. Since being elected, neither has ever proposed a single concrete step (let alone plan) to maximize long-term stockholder value. *Id.* ¶ 10. Instead, Koffey and Brennan embarked on a value-wrecking campaign to take over Masimo in 2024 without paying a control premium to Masimo's stockholders. *Id.* Accordingly, they purposefully buried their heads in the sand, refused to educate themselves on Masimo's financial information, refused to engage with Masimo's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

outside auditors, refused to approve and sign Masimo's periodic filings with the SEC, and falsely claimed Masimo had not provided them with important financial information—all to undermine the Company's credibility with investors, at the risk of jeopardizing timely SEC filings. *Id.*

For example, despite extensive onboarding, obtaining all requested information, and attending all board meetings, all Audit Committee meetings, all Compensation Committee meetings and all Nominating, Compliance, and Corporate Governance Committee meetings since joining the Board, the Politan Directors have consistently refused to approve the issuance any of Masimo required financial statements. *See id*. ¶ 73; Ex. 1 at 3; Ex. 2 at 4; Ex. 3 at 2-3. Among other reasons, they claim they received insufficient information to sign-off on Masimo's SEC reports but failed to identify what information was missing. Compl. ¶ 77. Confirming that this excuse was mere pretext to set up a second proxy fight, the Politan Directors encouraged other Board members to approve the same annual report. *Id*. ¶ 78. At no point have the Politan Directors identified anything in the financial statements they believe are unreliable or misstated. *Id.*

The Politan Directors also have consistently declined to offer constructive ideas and strategies for Masimo, instead actively working to sabotage value-maximizing plans. *Id.* ¶ 79. In a private meeting in January 2024, Mr. Kiani proposed to Koffey spinning off Masimo's Consumer Products Business. *Id.* ¶ 11. Koffey first supported the idea and presented Mr. Kiani a term sheet for the proposed deal shortly thereafter, including that: (1) Mr. Kiani would be paid all amounts due to him under his employment agreement in connection with the proposed transaction, and (2) Mr. Kiani would be provided an opportunity to acquire either voting control or majority ownership of the spun-off company's stock, including in exchange for consideration to be determined later. Ex. 4 at 1.

At the next Board meeting in February 2024, the Board formed a special committee, led by Koffey, to consider the potential spin-off further. Ex. 5 at 5-11.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

Once appointed, it became clear that Koffey intended for the potential spin-off to fail. In March 2024, the Special Committee's legal counsel sent Mr. Kiani a new term sheet with proposed terms that were entirely different than those proposed by Koffey in January, leaving it insolvent. Compl. ¶ 86. Koffey represented to Mr. Kiani that these new terms reflected the Special Committee's views. *Id.* ¶ 87. Not so. The other members of the Special Committee informed Mr. Kiani that the March term sheet represented a new proposed transaction and that they also shared Mr. Kiani's concerns that such a transaction would lead to an unviable consumer business. *Id.* Rather than end the process, Masimo's independent directors sent Koffey an updated proposal for the potential spin-off, at which point Koffey stated that he no longer wanted to engage in the transaction. *Id.* ¶ 88. Mr. Kiani even said that he would forgo any controlling interest in the Consumer Products Business and would remain with Masimo as its CEO and Chairman, leading to no change of control special payments. *Id.* Koffey still refused to engage and tanked the process, falsely claiming that Mr. Kiani was to blame. *Id.* ¶ 84.

After Koffey killed the spin-off, Masimo's management received an offer for the Potential Joint Venture for acquisition of a majority of the Consumer Products Business. *Id.* ¶ 12. The Potential Joint Venture would have given Masimo the ability to monetize 85% of the Consumer Product Business at an attractive multiple, while paying down debt and providing stockholders with some residual ownership in the business. *Id.* ¶ 97. Masimo announced this plan to the market on Friday, March 22, 2024, and the stock price spiked 14% in after-hours trading on the news. Ex. 7.

But a successful joint venture would undermine Koffey's efforts to take control, so Koffey once again sabotaged Masimo's share price gains by announcing—on the very next business day—that he would nominate two so-called "independent" candidates for Masimo's Board and disparaging Mr. Kiani

LATHAM & WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

5

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1 and the rest of the Board. Ex. 8. Koffey's lies had the desired impact: Masimo's

2 stock immediately dropped 9%. Ex. 7.

3      Recognizing the potential stockholder value, Masimo's management pressed

4 forward with evaluating the Potential Joint Venture. On May 8, 2024, all non-

5 executive Board members were asked to sign a confidentiality agreement. Koffey

6 and Brennan refused to sign. Compl. ¶ 95. That same day, Mr. Kiani asked the

7 Board to meet the next week to review and discuss a proposed non-binding term

8 sheet of the Potential Joint Venture. *Id*. On May 13, 2024, all members of the Board,

9 *including Koffey and Brennan*, were told the Potential Joint Venture Partner's

10 identity. *Id.* ¶ 96. The full Board also received other background materials about

11 the Potential Joint Venture, including a proposed non-binding term sheet, a proposed

12 exclusivity agreement, materials providing a preliminary analysis of the potential

13 Consumer Products Business separation, and a preliminary financial analysis. *Id*.

14 In response, Politan Directors urged the Board to delay any further assessment until

15 after the annual meeting, presumably to prevent Masimo from negotiating a

16 favorable deal that might harm the Politan Nominees' election chances. *Id*. ¶ 99.

17      **C.    Defendants Launch Second Proxy Contest Through False and
18             Misleading Proxy Materials**

19      Now, Koffey and Politan seek full control over Masimo, without regard to

20 the harm to stockholders. *See generally* Ex. 10.

21      Politan filed its Preliminary Proxy Statement on Schedule 14A on June 3,

22 2024 ("Politan Preliminary Proxy," attached as Exhibit 10) and its Definitive

23 Proxy Statement on June 21, 2024 ("Politan Definitive Proxy," attached as Exhibit

24 12), and together with the Preliminary Proxy Statement, the "Politan Proxy

25 Statements"). Since filing the Politan Proxy Statements, Politan, Koffey, and

26 Brennan have released additional materials to stockholders, including (1) a June

27 26, 2024 letter to investors, Ex. 13; (2) a June 26, 2024 investor presentation, Ex.

28 14; (3) a July 1, 2024 "Correcting the Record" investor presentation, Ex. 15; and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

(4) a July 11, 2024 letter to stockholders urging a "cultural reset," Ex. 16, (together with the Politan Proxy Statements, the "Politan Proxy Materials"). The Politan Proxy Materials ask stockholders to vote on a control slate: *i.e.*, if Politan succeeds in electing the two Politan Nominees, the Politan Nominees will, when added together with the existing Politan Directors, constitute a majority of the Board. Ex. 12 at 2. The Politan Proxy Materials make false and misleading statements and omissions about numerous topics and events, including, among other things, the following: (1) Koffey's secret relationship with Derivative Action plaintiffs' counsel; (2) the proposed spin-off of the Consumer Products Business and Special Committee overseeing that potential transaction; (3) the Potential Joint Venture; (4) the Politan Directors onboarding and information they received during their Board tenure; and (5) the Board's grant of authority to management in connection with a potential sale of the Company. *See* Compl. ¶¶ 118 – 206; Exs. 10; 12-16.

The Politan Proxy Materials also misrepresent a very real risk facing Masimo: if the Nominee Defendants are elected, Masimo may owe Mr. Kiani 2.7 million Restricted Stock Units ("RSUs") under an operative change-in-control provision in his employment agreement. Politan baselessly claimed to stockholders that these provisions are unenforceable and in any event, that Politan can avoid granting the RSUs by offering to reappoint Mr. Kiani as chair. Ex. 12 at 22. This is wrong. Mr. Kiani has indicated that if stockholders choose Politan, he will respect their decision and decline to return. Compl. ¶ 170. And under the employment agreement, a change in control will have been affected. Ex. 17 at 9-10.

But Koffey has not stopped at lying to stockholders to get his way. He has even collaborated with plaintiffs' counsel in a lawsuit *against* the Board. By way of background, on May 1, 2024, Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") filed a derivative complaint on behalf of a Masimo stockholder against the Board, including Koffey ("Derivative Action"), alleging

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

7

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

the Board harmed Masimo by pushing through an acquisition of an audio equipment company. *See* Ex. 11. The Derivative Action is based on the same allegations at issue in a separate securities class action filed against Masimo and remains pending, *Vasquez v. Masimo Corp.,* Case No. 3:23-cv01546-L-DEB (S.D. Cal.) ("Securities Class Action"). *Id.* at 2.

In connection with Koffey's second proxy contest, Masimo commissioned an investigation and diligence on the candidates Politan nominated for the Board. Compl. ¶ 103. During that diligence, two confidential witnesses were identified who reported that Koffey has been "working closely" with Wolf Haldenstein in the Derivative Action. *Id.* One of the confidential witnesses reported that "Koffey is 'actually named as a defendant [in the Derivative Action], but he doesn't care. He will use whoever will get him to where he needs to go.'" *Id.* As a member of the Board, Koffey has confidential and privileged information about Masimo. Sharing that information with opposing counsel not only assists plaintiff in the Derivative Action against the Board, but risks that information being used *against Masimo* in the Securities Class Action. *See id.* ¶104. Any effort to support the bogus claims in the Derivative Action directly undermines Masimo's defense in the Securities Class Action, a fact of which Koffey is well aware.

If successful, Koffey will have realized his goal of taking control of Masimo: his hedge fund will have four Board seats, allowing Koffey to direct Masimo as he pleases without the payment of a control premium to the stockholders. *Id.* ¶ 14. Put differently, Koffey (and Politan) will have taken control of Masimo without providing any financial benefit to Masimo stockholders associated with the change in control. That control premium is incredibly valuable and can range from 20-40% of stockholder value. *Agranoff v. Miller*, 791 A.2d 880, 899 (Del. Ch. 2001) (recognizing that control premiums are valuable and can range from 20-40% and ultimately applying a 30% control premium adjustment in its valuation analysis). If Koffey takes control based on the misstatements and

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

8

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1  omissions in the Politan proxy materials, he will be empowered to dismantle

2  Masimo in any form or fashion he wishes. *Id.* ¶ 14.

3  **III.    PROCEDURAL HISTORY**

4          On July 15, 2024, Plaintiff filed this lawsuit against Defendants alleging

5  violations of Section 14(a) of the Exchange Act, and the rules promulgated

6  thereunder, as well as breach of fiduciary duty and breach of contract claims. *See*

7  *id.* Plaintiff's Complaint details Defendants' violations of Section 14(a) and Rule

8  14a-9. Masimo stockholders should not be forced to make important decisions

9  about the future of Masimo until these claims are resolved. Plaintiff's Complaint

10 thus seeks: (1) an order declaring that the Politan Proxy Materials on Schedule 14A

11 and all amendments violate Section 14(a) of the Securities Exchange Act, and

12 Rules 14a-9, 14a-12, and 14a-101; (2) an order declaring the Nomination Notice

13 (defined below) does not comply with Masimo's Bylaws; (3) an order enjoining

14 Defendants from voting any proxies received by means of the misleading Politan

15 Proxy Materials; (4) an order invalidating any proxies Defendants or other persons

16 acting in concert with them obtained pursuant to the misleading Politan Proxy

17 Materials; and (5) an order requiring Defendants to correct their material

18 misstatements and omissions, and to furnish accurate disclosures required by law

19 before the annual stockholder meeting. *Id.* at 69-70

20         Masimo's 2024 Annual Meeting of Stockholders was previously scheduled

21 for July 25, 2024. *Id.* at 114. During the time Politan's Proxy Materials were being

22 released to the public, Koffey sent two letters to Masimo claiming that a stockholder

23 was engaged in "empty voting" and asking Masimo to set a new record date for

24 Annual Meeting. Ex. 18; Ex. 19. One of those letters was just last Friday. *Id.* While

25 there is no merit to this claim, Mr. Kiani agreed to propose that the Board consider

26 setting a new record date and new meeting date for the vote to eliminate the baseless

27 allegations. *See* Ex. 20 at 1. On July 15, 2024, the Board approved this proposal,

28 setting the annual meeting date for September 19, 2024. *See id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1    While Masimo believes it has sufficient evidence in this motion to support a

2    preliminary injunction, Masimo is also seeking expedited discovery with this

3    motion.  *See Ex Parte* Application for Expedited Discovery, filed concurrently.

4    **IV.    ARGUMENT**

5    A preliminary injunction is proper when, as here, Masimo (1) is likely to

6    succeed on the merits; (2) is likely to suffer irreparable harm without preliminary

7    relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the

8    public interest.  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  Masimo

9    meets the four elements required for this court to grant a preliminary injunction

10   against Defendants for the Section 14(a) and SEC Rule 14a-9 claims.  Specifically,

11   injunctive relief is necessary to prevent Koffey, Brennan, and Politan from

12   executing their plan to takeover Masimo by gaining control of the Board through

13   Masimo stockholder votes obtained through false and misleading information.[1]

14   **A.    Masimo Is Likely to Succeed on the Merits**

15   Section 14(a) was intended "to promote the free exercise of the voting rights

16   of stockholders by ensuring that proxies would be solicited with explanation to the

17   stockholder of the real nature of the questions for which authority to cast his vote is

18   sought."  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 381 (1970) (quotation

19   omitted).  Consistent with this, a proxy statement violates Section 14(a) if it (1)

20   contains "a material misrepresentation or omission which (2) cause[s] the plaintiff

21   injury and (3) [] the proxy solicitation itself, rather than the particular defect in the

22   solicitation materials, was an essential link in the accomplishment of the

23   transaction."  *N.Y.C. Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010)

24   (quotation omitted) (*overruled on other grounds by Lacey v. Maricopa County*,

25   693 F.3d 896 (9th Cir. 2012)).  Each element is satisfied here.

26

27

28   _____

[1] Because the breach of contract claim asserts that the Nomination Notice breached the Masimo Bylaws by violating Section 14(a), we focus our discussion on the 14(a) claims.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1.    **The Politan Proxy Materials Contain False and Misleading Statements and Omissions**

Masimo is likely to prove that the Politan Proxy Materials contain false and misleading statements and omissions and that there is a substantial likelihood that a reasonable stockholder would consider these misstatements and omissions "important in deciding whether to vote" for the Politan slate. *Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, 2014 WL 5604539, at *15 (C.D. Cal. Nov. 4, 2014). A reasonable stockholder would think twice before voting for the Politan slate if they knew that the Politan Directors were, for example, purposefully sabotaging strategic deals that could increase stockholder value and working with attorneys *suing the Board* for monetary damages. *See Mind Med. (MindMed) Inc. v. Freeman*, 2024 WL 729260, at *2, *4 (S.D.N.Y. Feb. 22, 2024) (complaint pled material misstatements where proxy "materials assert that the defendants 'attempted to engage constructively with the Board'" but omitted that defendants in fact declined to participate in director selection process).

As detailed below, the Politan Proxy Materials are replete with misrepresentations and omissions:

**(i) The Politan Directors' Supposed Commitment to Stockholder Interests.**  The Politan Proxy Statements claim that Koffey and the Politan Nominees are committed to being fierce advocates for the stockholders and acting in Masimo's best interests. *See, e.g.*, Ex. 10 at 2 (Politan, "[a]s a significant long-term Stockholder of Masimo," is "committed to maximizing the value of the Company for all Stockholders"); Ex. 12 at 2 (same).  But far from it, Koffey has been secretly collaborating with Wolf Haldenstein in the Derivative Action, which could damage Masimo's litigation defense strategy in the Securities Class Action, damaging stockholder value. *See* Compl. ¶ 104.  Courts have found that misstatements about directors' intentions are material to stockholders' voting decisions. *See Allergan*, 2014 WL 5604539, at *15 (finding a material

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

11

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

misstatement where proxy materials failed to disclose directors' true intentions to pursue a hostile takeover); *MindMed,* 2024 WL 729260, at *4 (concluding that the complaint pled material misstatements where proxy materials omitted that defendants declined to participate in director selection process after asserting that they attempted to engage constructively with the board).

**(ii) The Potential Spin-Off and the Politan Directors' Manipulation of the Special Committee.** The Politan Proxy Statements falsely claims that Mr. Kiani proposed the transaction on terms favorable to him, the Special Committee proposed different terms, and Mr. Kiani then killed the deal and disbanded the Special Committee when he didn't get his way. *See* Ex. 10 at 10-11; Ex. 12 at 9-10. But it was *Koffey* who proposed that Mr. Kiani would (1) control the spun-off company and (2) still be eligible for certain executive compensation. Compl. ¶¶ 80-83; Ex. 4. And the Politan's lawyers March term sheet that deviated from Koffey's January proposal were not the Special Committee's views. Messrs. Reynolds and Classon, the other members of the Special Committee, both agreed that the March term sheet represented an entirely new and unviable proposed transaction. Compl. ¶ 87. And Mr. Kiani did not seek to disband the Special Committee, but instead Mr. Kiani stated that he would forgo any controlling interest in the Consumer Products Business, removing the potential conflict that required the establishment of the Special Committee. *Id.* ¶ 149.

**(iii) The Potential Joint Venture and Koffey's Objections to It.** The Politan Proxy Statements also claim that "the full Board was also unaware that discussions with a potential joint venture partner were occurring and that the confidentiality agreement with such party had been signed the previous week" and that Masimo "refused to disclose the identity of the potential joint venture partner" to the Board until Koffey made a Section 220 books and records inspection demand on May 8, 2024. Ex. 10 at 11-13; Ex. 12 at 10-12. These statements, too, are false and misleading.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

In March 2024, a third party indicated to Masimo management that it would be interested in exploring an acquisition of a majority of the Consumer Products Business. Compl. ¶ 12. Masimo entered a confidentiality agreement with this third party on March 20, 2024. *See* Ex. 12 at 10. The Board was provided with more information about discussions about a Potential Joint Venture on April 25, 2024 ahead of a planned April 30, 2024 Board meeting. *See* Compl. ¶ 160; Ex. 21 at 2. Contrary to the Politan Proxy Statement's assertion otherwise, *see* Ex. 10 at 13, Masimo's management team was not seeking a binding joint venture agreement. Instead, and as discussed during this April 30, 2024 Board meeting, Masimo was working on diligence and discussing a potential non-binding term sheet with the third-party Potential Joint Venture Partner, the terms of which were discussed during this meeting. Ex. 21 at 2. Indeed, that is exactly what happened; Masimo entered a non-binding term sheet weeks later on May 8, 2024. Compl. ¶ 160.

And Koffey made no request for the Potential Joint Venture Partner's identity until May 2, 2024. Compl. ¶ 161. On May 7, 2024, all of the non-executive members of the Board were asked to sign a short-form confidentiality agreement protecting the Potential Joint Venture Partner's identity, which Koffey and Brennan refused to sign. Compl. ¶ 95. Despite this refusal, on the same day—May 7, *before Koffey's May 8th 220 demand*—Mr. Kiani asked that the Board meet the next week to review and discuss the Potential Joint Venture, including the identity of the potential partner, the terms of the proposed non-binding term sheet, preliminary financial analysis, and proposed next steps. On May 13, 2024, all members of the Board, *including Koffey*, learned the identity of the Potential Joint Venture Partner and received other materials relating to the Potential Joint Venture. Compl. ¶ 96.

The Politan Proxy Materials also make false and misleading statements about the actual terms of the Potential Joint Venture, including that Mr. "Kiani is pursuing a separation of a newly formed entity that will take Masimo's trademarks, trade secrets and licenses to its IP," which risks "the creation of a new competitor,"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

and that Mr. Kiani is pursuing the Potential Joint Venture for an "immediate payout of ~400M." Ex. 13 at 1-2. None of this is true. Certain of Masimo's intellectual property was initially being considered as part of the potential spin-off that Koffey killed, but Mr. Kiani agreed that would not be part of the Potential Joint Venture. Compl. ¶ 164. And Mr. Kiani is not "enriching" himself. He has put no cash towards the Potential Joint Venture and has never expressed an intent to invest in it. *Id.*

**(iv) Mr. Kiani's Employment Agreement.** The Politan Proxy Materials also make false claims about a provision in Mr. Kiani's employment agreement under which Mr. Kiani has a right to receive 2.7 million RSUs if there is a change in majority control of the Board over a 12-month period. Compl. ¶¶ 166-67. The Politan Proxy Materials baselessly assert that this change-in-control provision is unenforceable. Ex. 12 at 22. Politan also claims that it could also get around this provision of Mr. Kiani's employment agreement by reappointing Mr. Kiani as chair to the Board. But if the Politan Nominees win, Mr. Kiani will not even be a director. He will therefore have the right to resign and immediately receive the RSUs that he was granted under the 2015 agreement, constituting around 5% of the Company. Compl. ¶ 170; *see generally* Ex. 17.

**(v) The Politan Directors' Onboarding Process and Information Received.** The Politan Proxy Materials also claim that the Politan Directors were never "onboard[ed]," did not receive "basic information," were "denied…access to management," and were excluded from Board meetings. Ex. 10 at 6-7, 17; *see also* Ex. 13 at 2; Ex. 14 at 24. But the Politan Directors received extensive onboarding briefings and information, including, but not limited to, thousands of pages of Masimo's historical Board materials and multiple meetings with Masimo's management team, current Board members, and independent auditor. Compl. ¶¶ 172-73. The Politan Directors were also invited to, and in fact attended, all Board and committee meetings held since they joined the Board. *Id.* ¶ 62.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1    Koffey also claims that the Politan Directors were never provided certain

2    information related to Masimo, including financial information they claimed that

3    they needed to sign off on Masimo's financials and other corporate documents.

4    Ex. 10 at 7-8; *see also* Ex. 14 at 24. That characterization is materially false and

5    misleading for at least four reasons.

6        *First*, Koffey fails to acknowledge that, as a member of the Audit

7    Committee, he had access to the Company's independent auditor, Grant Thornton,

8    and had every opportunity to ask questions about the Company's financials during

9    meetings with the auditor.  Compl. ¶ 188.

10       *Second*, the Politan Proxy Statement omits the chronology of what happened

11   around the time of filing the Company's 2023 Annual Report on Form 10-K.

12   Masimo management discussed the draft in detail with the Board, and the majority

13   of the independent directors confirmed that they would sign the 2023 Annual

14   Report.  Compl. ¶ 190.   Koffey and Brennan, in contrast, refused to sign until they

15   received additional information.  The next day, the heads of Finance &

16   Accounting, Cybersecurity, Compliance, Quality, and Supply Chain made

17   presentations to the Board to address the Politan Directors' questions.  Compl. ¶

18   191; Ex. 3 at 1-2.  Company representatives asked Koffey if there was other

19   information he would need to sign the 10-K.  Compl. ¶ 191.  Koffey responded no,

20   there was no other information he needed because Masimo had provided

21   everything he asked for.  *Id*.  In fact, he encouraged the non-Politan Board

22   members to sign the 10-K.  *Id.*  He, however, still refuse to sign.  *Id.*; Ex. 3 at 2-3.

23       *Third*, Koffey claims he has never had the opportunity to review Masimo's

24   impairment analysis, Ex. 10 at 8, despite being a member of the Audit Committee

25   and having unfettered access to the Company's auditor.  In any event, Koffey's

26   claim is simply untrue.  *See* Compl. ¶ 192.

27       *Fourth*, Koffey specifically met with the head of U.S. sales for the

28   Company, Bilal Muhsin, at least twice in July 2023, rendering his claim that he

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1   was never able to speak with the head of U.S. sales demonstrably false. *Id.* ¶ 193.

2   Mr. Muhsin also presented to the Board multiple times during Koffey's tenure, and

3   Koffey did not request follow-up or other information after those presentations. *Id.*

4   ¶ 193. Similarly, Masimo's head of the Company's Consumer Products Business

5   also made presentations to the Board. *See, e.g.*, Ex. 5 at 3. Koffey again did not

6   ask for follow-up information, nor did he request another meeting with the head of

7   Masimo's Consumer Products Business. Compl. ¶ 193.

8       **(vi) The Board's Oversight of a Potential Whole-Company Sale Process.**

9   Politan's proxy statement claims that the Board delegated authority to management

10  to sell the Company "without any obligation to provide process updates to the

11  Board." Ex. 10 at 6. Politan further claims that "[a]t no point in 2023 after the

12  June Board meeting was the Board ever presented with any strategic options other

13  than a full Company sale," and that Mr. Kiani eventually told the Board "he was

14  unable to find a deal on what he considered to be satisfactory terms." *Id.* at 7.

15      Again, this is a lie. The Board did not delegate to management the authority

16  to carry out a sale of the entire Company, much less the authority to negotiate a

17  sale with no oversight or input from the Board. Compl. ¶ 200. Instead, as the June

18  24, 2023 Board meeting minutes that Koffey received recite, the Board made a

19  limited delegation of authority to management to retain and coordinate with a

20  financial advisor to explore whether and what strategic options may be available to

21  Masimo. *Id.* ¶ 201; Ex. 22 at 1-2. Indeed, Koffey began communicating with the

22  Company's lead banker at Morgan Stanley just two weeks after he joined the

23  Board. *Id.* ¶ 204. The Politan Directors also had a one-hour Zoom call with

24  Morgan Stanley to get up to speed on the process. *Id.* And contrary to their

25  assertion, throughout 2023 and into January 2024, Mr. Kiani did not receive any

26  offers on any terms for a sale of the Company. *Id.* ¶¶ 102-05.

27      Finally, the Politan Proxy Materials omit key information about Politan's

28  plans for Masimo, should it succeed in the proxy contest. In particular, neither

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

16

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1  Politan nor Koffey have said anything about their plans for the Company if they

2  were to gain control of the Board without paying any control premium, including

3  their plans for a sale of either all or part of Masimo.  *See generally* Exs. 10, 12-16.

### 2.     The Politan Proxy Materials Caused Masimo's Injury and Are an "Essential Link" to Accomplishing the Election of the Politan Slate

6       Masimo satisfies the second and third prongs of the Section 14(a) violation

7  test—loss causation and transaction causation.  As for loss causation, Masimo

8  "was forced to expend unnecessary Company resources in waging a proxy contest

9  against" Politan, which was illegitimate because of Politan's material

10  misrepresentations and omissions.  *Enzo Biochem, Inc. v. Harbert Discovery Fund,*

11  *LP*, 2021 WL 4443258, at *9 (S.D.N.Y. Sept. 27, 2021) (finding loss causation

12  where company incurred significant expenses due to proxy contest necessitated by

13  misleading proxy materials); *see also* Compl. ¶ 225.  The Politan Proxy Materials

14  are also an "essential link" to achieving the election of the Politan slate.  *See Va.*

15  *Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1100 (1991).  The Politan Proxy

16  Materials are necessary for Defendants to vote stockholder proxies in support of

17  the Politan Nominees.  Moreover, the false and misleading Politan Proxy Materials

18  convinced proxy advisory firms Glass Lewis and ISS to endorse the Politan

19  candidates, which are parroting Defendants' lies as facts.  *See* Ex. 23 (Glass Lewis

20  Report); Ex. 24 (ISS report); *see also Enzo Biochem, Inc. v. Harbert Discovery*

21  *Fund, LP*, 2021 WL 4443258, at *10 (S.D.N.Y. Sept. 27, 2021) (concluding

22  plaintiff pled transaction causation where proxy solicitations persuaded proxy

23  advisory firm to endorse defendants' candidates, and solicitations misled majority

24  of stockholders into voting for defendants).

### 3.     Defendants Acted with at Least Negligence

26       Defendants made the misstatements and omissions in the Politan Proxy

27  Materials with the requisite level of culpability, which for Section 14(a) and Rule

28  14a-9 is mere negligence.  *See In re Maxim Integrated Prods., Inc., Deriv. Litig.*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

574 F. Supp. 2d 1046, 1066 (N.D. Cal. 2008). Under federal securities laws, negligence is a failure to exercise "reasonable prudence." *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001). "Section 14(a) requires proof only that the proxy solicitation was misleading, implying at worst negligence by the issuer. And negligence is not a state of mind; it is a failure, whether conscious or even unavoidable . . ., to come up to the specified standard of care." *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) (citation omitted)). Defendants knew that the above attacks on Masimo and Mr. Kiani were not true, which is supported by the sheer number of misstatements and omissions here. *See generally* Compl. These include but are not limited to:

- Defendants' wholesale failure to disclose their communications with Derivative Action plaintiffs' counsel. *See, e.g.*, Compl. ¶¶ 101-104.
- Misrepresentations that Mr. Kiani proposed a spin-off transaction favorable to himself, when in fact *Koffey* proposed that Mr. Kiani would retain control of the new, spun-off Company and retain his right to the Special Payment under his employment agreement. *Compare* Ex. 10 at 11 *with* Ex. 4 at 1.
- Misrepresentations that Koffey and Brennan never received information during onboarding and their tenure on the Board, despite having access to thousands of pages of materials and Masimo management and advisors. Compl. ¶ 68.
- Claims about Mr. Kiani's corporate jet use, when in fact Mr. Kiani either (1) used the jet for business travel or (2) reimbursed Masimo for his travel. *See, e.g.*, Compl. ¶ 195.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

### B.    Masimo Will Suffer Irreparable Harm Absent a Preliminary Injunction

Masimo also satisfies the second prong: likely to suffer irreparable harm without a preliminary injunction. *Winter*, 555 U.S. at 20. Irreparable harm is harm "for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). This harm must be imminent. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

The Supreme Court has instructed that "in corporate control contests the stage of preliminary injunctive relief, rather than post-contest lawsuits, is the time when relief can best be given." *Piper v. Christ–Craft Indus.*, 430 U.S. 1, 42 (1977) (quotation omitted). "[P]reventing an uninformed shareholder vote through corrective disclosures once the inadequate disclosure is discovered is preferable to sorting out post-vote remedies for uninformed shareholders." *Allergan*, 2014 WL 5604539, at *16. That is why courts have repeatedly found that the threat of an uninformed stockholder vote presents an irreparable harm when the vote involves "significant changes to [] corporate governance," including major board elections. *Allergan*, 2014 WL 5604539, at *16 (finding irreparable harm and ordering defendants to make corrective proxy disclosures before stockholder vote on proposals, including to remove a majority of board members); *see also Taseko Mines Ltd. v. Raging River Cap.*, 185 F. Supp. 3d 87, 93-94 (D.D.C. 2016) (finding irreparable harm where uninformed stockholder vote could "significantly affect who wins several director positions" and board control, and "sorting out post-vote remedies" would be difficult because the vote would cause a change of control). So too here. If Defendants are allowed to vote any proxies they solicited in violation of Section 14(a) and if other similarly uninformed stockholders vote for the Politan Nominees, Politan will have gained majority control of the Board and Masimo on false pretenses—all without providing Masimo stockholders with a control

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

19

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

premium.  *See* Compl. ¶¶ 14-15; *see also Bender v. Jordan*, 439 F. Supp. 2d 139, 176 (D.C. Cir. July 21, 2006) (finding irreparable harm where there was a threat of an uninformed stockholder vote and a substantial likelihood that allowing the election to go forward "would helplessly complicate matters, perhaps making it impossible to unscramble the eggs should the post-hoc reorganization of a standing board prove necessary.").

Additionally, Koffey and Brennan are not working to achieve the most value-maximizing deal for the sale of Consumer Products Business.  *See* Compl. ¶¶ 91-101.  Not only have Koffey and Brennan urged the Board to delay assessment on the Potential Joint Venture that could result in the highest reasonable price, but Koffey has said Masimo should give the Consumer Products Business away for nothing—both of which show a willingness to sell the business line for far less than it's valued.  *See* Compl. ¶¶ 80, 98-101; *see, e.g.*, *MONY Grp., Inc. v. Highfields Cap. Mgmt., L.P.*, 368 F.3d 138, 148 (2d Cir. 2004) (finding irreparable harm where uninformed proxy vote "could spell the loss of a business opportunity that (by its nature) can only exist at one point in time and cannot be recovered or repaired with money damages").  And Koffey is conspiring with plaintiffs in a lawsuit that Masimo and the Board are defending, jeopardizing Masimo's defense (and potentially causing financial harm to the Company).  *See* Compl. ¶¶ 102-05.

Without injunctive relief before the annual meeting, Masimo and its stockholders, who were uninformed because of Defendants' securities violations, may be forced to endure a Politan-run Board making decisions that cannot be unwound easily, if at all, even after Masimo prevails on its Complaint.  Indeed, these lies are already working as just in the past week Glass Lewis and ISS, proxy advisory firms, have advised Masimo stockholders to vote their proxies for the Nominee Defendants, citing Defendants' lies as the truth.  *See* Ex. 23 (Glass Lewis Report); Ex. 24 (ISS report).

LATHAM&WATKINS
ATTORNEYS AT LAW
LOS ANGELES

20

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

### C.    The Balance of Equities Favors Masimo

The balancing of equities also favors Masimo.  *Winter*, 555 U.S. at 24.
Masimo's potential harm is great—without the limited injunction requested,
uninformed stockholders may vote to change control of the Board to Politan.  *See,*
*e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1150
(D. Kan. 2001) (balance of hardship "clearly favors" plaintiff where plaintiff
subject to "irreparable injury to its reputation and shareholder trust," and "may be
subject to a major change" to its Board).  In contrast, Defendants are not harmed
by an injunction that simply requires them to correct their own false and
misleading disclosures, which would involve little expense.  *See id.*; *see also*
*Allergan*, 2014 WL 5604539, at *16 (balance of equities for plaintiff where only
cost to defendants was expense of making corrective disclosures).  The requested
relief would level the playing field for Masimo and allow stockholders to make an
informed vote.

### D.    A Preliminary Injunction Serves the Public Interest

Masimo also satisfies the last *Winter* factor—the requested injunctive relief
serves the public interest because it will lead to an informed stockholder vote.  *See,*
*e.g.*, *Allergan*, 2014 WL 5604539, at *16 ("An injunction ordering corrective
disclosures is also in the public interest, as it prevents an uninformed shareholder
vote.").  Additionally, "effective enforcement of the federal securities laws
promotes the public interest."  *Taseko Mines Ltd.*, 185 F. Supp. 3d at 94; *see also*
*Lone Star Steakhouse & Saloon,* 148 F. Supp. 2d at 1150 (holding a preliminary
injunction requiring a corrective disclosure served public interest because "the
public interest always lies with the truth").

### E.    No Security Should Be Required for the Preliminary Injunction

Although Federal Rule of Civil Procedure 65(c) states that a preliminary
injunction requires the movant give "security in an amount that the court considers
proper," FRCP 65(c), the "district court retains discretion as to the amount of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

security required, if any," *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (quotation omitted).  And it is Defendants' burden to "present[] evidence that a bond is needed." *Conn. Gen. Life Ins. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).  The bond amount may be "zero" with no evidence of damage suffered from the injunction.  *Id.* at 882.  As discussed above, there is no chance, much less likelihood, of harm to Defendants here.  Accordingly, no security should be required.

**V.    CONCLUSION**

Masimo respectfully requests this Court issue an order preliminarily enjoining Defendants from voting any proxies solicited by them in violation of Section 14(a) or Rule 14a–9 until corrective disclosures are made.

Dated:  July 18, 2024                                    Respectfully submitted,

                                                                      LATHAM & WATKINS LLP

                                                                      By */s/Michele D. Johnson*
                                                                            Michele D. Johnson
                                                                            Jordan D. Cook
                                                                            650 Town Center Drive, 20th Floor
                                                                            Costa Mesa, CA 92626-1925
                                                                            T: (714) 540-1235 / F: (714) 755-8290
                                                                            michele.johnson@lw.com
                                                                            jordan.cook@lw.com

                                                                            Colleen C. Smith
                                                                            12670 High Bluff Drive
                                                                            San Diego, California 92130
                                                                            T: (858) 523-5400 / F: (858) 523-5450
                                                                            colleen.smith@lw.com

                                                                            *Attorneys for Plaintiff Masimo Corporation*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

CIVIL ACTION NO. 8:24-cv-01568-JVS-JDE
PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION