BETHANY W. KRISTOVICH (SBN 241891)
bethany.kristovich@mto.com
JOHN M. GILDERSLEEVE (SBN 284618)
john.gildersleeve@mto.com
JULIANA M. YEE (SBN 304564)
juliana.yee@mto.com
ANNE K. CONLEY (SBN 307952)
anne.conley@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

MICHAEL E. SWARTZ *(pro hac vice)*
michael.swartz@srz.com
RANDALL T. ADAMS *(pro hac vice)*
randall.adams@srz.com
FRANK W. OLANDER *(pro hac vice)*
frank.olander@srz.com
MINJI REEM *(pro hac vice)*
minji.reem@srz.com
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone:  (212) 756-2000
Facsimile:   (212) 593-5955

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br><br>              Plaintiff,<br><br>       vs.<br><br>POLITAN CAPITAL<br>MANAGEMENT LP et al.,<br><br>              Defendants. | Case No. 8:24-cv-01568-JVS-JDE<br><br>**DEFENDANTS' *EX PARTE* APPLICATION TO COMPEL DISCLOSURE OF CONFIDENTIAL WITNESS IDENTITIES**<br><br>Judge:   Hon. James V. Selna<br>Crtrm.:  10C<br><br>Filed concurrently herewith:<br>     (1) Declaration of Juliana M. Yee<br>     (2) Declaration of Michael E. Swartz<br>     (3) [Proposed] Order |

## NOTICE OF *EX PARTE* APPLICATION

**TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, in accordance with Local Rule 7-19 and this Court's Standing Order, Defendants Politan Capital Management LP ("Politan"), Politan Capital Management GP LLC, Politan Capital Partners GP LLC, Politan Capital NY LLC, Politan Capital Partners LP, Politan Intermediate Ltd., Politan Capital Partners Master Fund LP, Politan Capital Offshore Partners LP, Quentin Koffey, Michelle Brennan, William Jellison, Darlene Solomon, Matthew Hall, and Aaron Kapito (collectively, "Defendants"), by and through their counsel of record, respectfully move on an *ex parte* basis to compel Plaintiff Masimo Corporation to identify the "confidential witnesses" referenced in its verified Complaint to support central allegations of misconduct by Defendants.  (Dkt. 1, Compl. ¶ 103; *see also id.* at ¶¶ 104, 107, 123, 125, 130, 131, 133-134, 243, 248; Dkt. 13-1, Mem. iso Mot. Prelim. Inj. ("PI Mem."), at 7, 8, 11.)

This *ex parte* application is based on the memorandum of points and authorities, the supporting documents filed herewith, all pleadings and papers of record on file in this case, and such additional authority and argument as may be presented at or before the time this application is decided.

This motion is made in compliance with L.R. 7-19.  On the parties' meet-and-confer conference call on Monday, July 29, 2024, at 7:00 pm, Defendants' counsel provided notice to Plaintiff's counsel that Defendants were going to move to compel on this basis.  (Yee Decl. ¶ 9.)  On Wednesday, July 31, 2024, at 9:50 am, Defendants' counsel emailed Plaintiff's counsel to confirm Defendants' motion would be filed today and asked that if Plaintiff's counsel would like to proceed by joint stipulation as provided in L.R. 37, that Plaintiff provide its insert by 3:00 pm.  (*Id.* ¶ 10, Ex. A.)  Plaintiff did not agree to proceed by joint stipulation and refused to send an insert.  (*Id.*)  Defendants' counsel therefore called Plaintiff's counsel and

left a voicemail advising that they would proceed with this *ex parte* application and Plaintiff's response would be due 24 hours after filing. (*Id.*)

The names, addresses, telephone numbers, and e-mail addresses of Plaintiff's counsel are as follows:

Latham & Watkins LLP
Michele D. Johnson
Jordan D. Cook
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
T: (714) 540-1235 / F: (714) 755-8290
michele.johnson@lw.com
jordan.cook@lw.com

Colleen C. Smith
12670 High Bluff Drive
San Diego, CA 92130
T: (858) 523-5400 / F: (858) 523-5450
colleen.smith@lw.com

Matthew Rawlinson
140 Scott Drive
Menlo Park, CA 94024
T: (650) 328-4600 / F: (650) 463-2600
matt.rawlinson@lw.com

Robert J. Ellison
10250 Constellation Blvd., Ste. 1100
Los Angeles, CA 90067
T: (424) 653-5500 / F: (424) 653-5501
robert.ellison@lw.com

DATED:  July 31, 2024                    Respectfully submitted,


By:    /s/ *Bethany W. Kristovich*
          BETHANY W. KRISTOVICH
          Attorneys for Defendants

.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.      INTRODUCTION ................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................. 2

        A.      The Complaint and PI Motion Rest on Information from CWs ............ 2

        B.      Defendants Repeatedly Requested the CWs' Identities ........................ 2

        C.      After Days of Stalling, Plaintiff Claims It Does Not Have the
                Names ................................................................................................... 4

        D.      Nothing Stands in the Way of Plaintiff's Compliance .......................... 5

III.    ARGUMENT ......................................................................................... 5

        A.      Defendants Are Entitled to Know the Identity of Confidential
                Witnesses at the Center of This Case .................................................... 6

        B.      Masimo Must Disclose Information Within Its Possession,
                Custody, and Control ........................................................................... 7

        C.      If Plaintiff Truly Is Unable to Identify the Confidential
                Witnesses on Which Its Complaint Relies, Then It Violated Rule
                11 .......................................................................................................... 9

IV.     CONCLUSION ...................................................................................... 10

CERTIFICATE OF COMPLIANCE ........................................................................ 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

As the Court ordered, Defendants served "focused discovery" (Dkt. 32) by asking Plaintiff to name the "two confidential witnesses" ("CWs") quoted in the Complaint.  (*E.g.*, Dkt. 1, Compl. ¶ 103.)  The CWs have relevant information because their purported statements are the basis for Plaintiff's claims.  (*E.g.*, *id.* ¶¶ 103-104, 107, 123, 125, 130-131, 133-134, 243, 248.)  Defendants therefore are entitled to depose them to explore the basis for their statements, their motives and veracity, and whether the Complaint accurately reflects what they said.

Plaintiff refuses to name the CWs cited in its Complaint.  Plaintiff does not dispute that the CWs' identities are discoverable.  Nor could it, as courts routinely order such discovery.  Instead, Plaintiff claims ignorance, arguing that only the investigator that Plaintiff hired, and not Plaintiff or its attorneys, knows who the CWs cited in Plaintiff's Complaint are.  That is so even though Plaintiff had its investigator's report for over seven weeks before filing the Complaint, and even though over two weeks have now passed since Plaintiff put that verified pleading before the Court and pressed for expedited discovery over a three-week period.

Plaintiff's position contradicts basic discovery rules.  Information known to Plaintiff's investigator, a hired agent who gathered information used in Plaintiff's Complaint, is within Plaintiff's "control."  Fed. R. Civ. P. 34(a)(1).  Plaintiff's position—which already has caused six days of delay—would run out the clock on this short period of expedited discovery, allowing an indefensible core allegation to stand untested.

Most seriously of all, Plaintiff's position concedes that Plaintiff presented to the Court and continues to advocate a pleading without conducting "an inquiry reasonable under the circumstances."  Fed. R. Civ. P. 11(b).  Courts criticize in strong terms, and even sanction, plaintiffs' counsel for willful ignorance in this exact scenario:  blindly relying on an investigator and failing to speak with CWs to

verify their statements before putting them in a complaint and setting the judicial machinery to work.  If Plaintiff and its counsel truly are unable, as they claim, to name the CWs cited in the Complaint, their "shoot first, aim later" conduct will be difficult to account for during the PSLRA's mandatory Rule 11 review.

## II.   FACTUAL BACKGROUND

### A.   The Complaint and PI Motion Rest on Information from CWs

Masimo seeks a preliminary injunction based on a false and defamatory allegation that Quentin Koffey has secretly conspired with a law firm, Wolf Haldenstein, in a lawsuit filed by that firm against Masimo's Board (including Mr. Koffey).  (Dkt. 1, Compl. ¶¶ 103-104, 107, 123, 125, 130-131, 133-134, 243, 248; Dkt. 13-1, PI Mem. at 7-8, 11.)  Masimo concedes that "these allegations are based on an investigation commissioned by a professional firm, which interviewed sources who spoke of Mr. Koffey's communications with and support of parties in ongoing litigation that is not in the best interests of the Company."  (Dkt. 51 at 1-2.)  Masimo alleges it was informed of this alleged wrongdoing by "two confidential witnesses":

> In connection with Koffey's second proxy contest, Masimo commissioned an investigation and diligence on the candidates Politan nominated for the Board.  Compl. ¶ 103.  During that diligence, **two confidential witnesses** were identified who reported that Koffey has been "working closely" with Wolf Haldenstein in the Derivative Action. *Id.*  One of the confidential witnesses reported that "Koffey is 'actually named as a defendant [in the Derivative Action], but he doesn't care.  He will use whoever will get him to where he needs to go.'"  *Id.*

(Dkt. 13-1, PI Mem., at p. 8 (emphasis added).)  Based on these alleged CW statements, Plaintiff claims that Defendants violated Section 14(a) of the Exchange Act and that purported misrepresentations must be corrected before the stockholder vote.  (*See* Compl. ¶¶ 103-104, 107, 123, 125, 130-131, 133-134; Dkt. 13-1, PI Mem., at 7, 8, 11.)

### B.   Defendants Repeatedly Requested the CWs' Identities

*Defendants Promptly Request the CWs' Identities.*  On July 25, 2024, upon receiving Plaintiff's requests for production ("RFPs") seeking any communications

by Politan and Koffey about the Wolf Haldenstein lawsuit, Defendants asked Plaintiff in writing to "disclose the identity of the confidential witnesses and advisors referenced in Paragraph 103 of the Complaint, as well as the substance of their allegations[.]"  (Yee Decl., Ex. A [Adams 7/25 7:54 pm email].)  Defendants followed up later that day with a focused RFP seeking all documents and communications "regarding or with the 'two confidential witnesses' referenced in Paragraph 103 of the Complaint."  (*Id.*, Ex. B [RFP No. 3].)

The next day, after Plaintiff's counsel responded by email without acknowledging the request for CW identities, Defendants' counsel asked again: "[P]lease let us know if you are willing to disclose the names of the confidential informants."  (*Id.*, Ex. A [Conley 7/26 12:51 pm email].)  Again, Plaintiff's counsel responded on other issues but omitted a response as to whether Plaintiff would disclose the CW identities.  (*Id.*, Ex. A [Ellison 7/26 4:40 pm email].)

*Repeatedly Ignored by Plaintiff, Defendants Ask Again.*  On a meet-and-confer call the next day, July 26, Defendants' counsel reiterated for *a fourth time* their request for the CWs' identities.  (Yee Decl. ¶ 5.)  Plaintiff's counsel stated that they had received the request only "fifteen minutes ago" and needed to discuss it with their client.  (*Id.*)

*And Again.*  By Sunday, July 28, Defendants had developed and sent to Plaintiff a full discovery proposal outlining their collection plan in response to Plaintiff's requests, but still had heard nothing from Plaintiff regarding the CWs' identities.  (*Id.*, Ex. A [Reem 7/28 2:39 pm email and Yee 7/28 11:03 pm email].)

Defendants asked for a *fifth time*:

[W]e would like to hear your response regarding whether you plan to identify the confidential witnesses cited in Masimo's false and defamatory allegation that Quentin Koffey has been collaborating with plaintiff's counsel in a derivative action brought against the Company. ***We have been inquiring about this since Thursday, July 25, and you agreed to get back to us on this request promptly.***

(*Id.*, Ex. A [Yee 7/28 11:03 pm email] (emphasis added).)  Plaintiff still did not respond.

*And Again.*  Having received no response to five requests for the CWs' names—indeed, having not even received Plaintiff's position on whether it would disclose their names—Defendants served on Sunday evening interrogatories requiring that Plaintiff "[i]dentify by name, contact information, employer, and title each 'advisor' and 'confidential witness' referenced in Paragraph 103 of the Complaint."  (*Id.*, Ex. C [7/28 Defs.' First Set Rogs to Pl.].)

*And Again.*  Defendants pressed on, asking again on the morning of July 29 for the meet-and-confer call that day that the parties had planned.  (*Id.*, Ex. A [Adams 7/29 9:28 am email].)  Instead, Masimo filed an *ex parte* application to compel responses to its document requests, despite having still not conferred on Defendants' request for CW identities that had been pending since July 25.  (Dkt. 45.)  Later, Plaintiff's counsel sent an email extensively discussing its RFPs and agreeing to meet and confer, but omitting yet again to address the CW identities.  (Yee Decl., Ex. A [Ellison 7/29 1:00 pm email].)  Defendants' counsel then asked for a *seventh time* to discuss the "identities of the confidential witnesses and advisors referenced in Paragraph 103 of the complaint. … Please identify them."  (*Id.*, Ex. A [Adams 7/29 email at 4:49 pm].)

## C.   <u>After Days of Stalling, Plaintiff Claims It Does Not Have the Names</u>

On a meet-and-confer call the evening of July 29, Plaintiff's counsel stated its position: *Neither Plaintiff nor Plaintiff's counsel even knows who the CWs quoted in the Complaint are.*  (Yee Decl. ¶ 9.)  Plaintiff's counsel said they would produce a "report" and that Defendants' counsel can "do what you want with the report."  (*Id.*)  Asked whether the report would contain the CWs' names, Plaintiff's counsel stated that it would not.  (*Id.*)

Shocked that Plaintiff claimed not to know the CWs' names when it filed its verified Complaint and claimed still not to know them, Defendants told Plaintiff that

1  they would move to compel the CWs' identities and the report the next day.  (*Id.*)

2  Defendants also told Plaintiff that they had serious Rule 11 concerns with Plaintiff's

3  apparent ignorance of the CWs' identities when the Complaint rested on the CWs'

4  factual assertions.  (*Id.*)

### D.  <u>Nothing Stands in the Way of Plaintiff's Compliance</u>

6  As of this morning, July 31, the parties executed and filed a joint stipulated

7  protective order containing an attorneys' eyes only ("AEO") designation.  (Dkt. 52.)

8  Several hours later, Plaintiff produced the four-page report under an AEO

9  designation.  The report does not identify the CWs.  (*See* Yee Decl. ¶ 11, Ex. D.)

10  As of this filing, Plaintiff has still not provided the CW's identities.  (*Id.* ¶ 12.)

11  Defendants' counsel confirmed with Plaintiff this morning that they intended

12  to move to compel the CWs' identities.  (Yee Decl. ¶ 10, Ex A.)  Given the

13  expedited time frame for discovery, Defendants requested that if Plaintiff agreed to

14  proceed by joint stipulation, it provide its statement by 3:00 pm.  (*Id.*)  Plaintiff did

15  not agree, refused to provide an insert, and claimed "there is nothing to compel

16  here" despite not having provided the CWs' identities and saying it "intend[s] to

17  respond tomorrow to Defendants' interrogatories," which had a response deadline of

18  today, July 31.  (*Id.*; Ex. C [Defs. Rogs].)  Defendants then confirmed by phone,

19  leaving a message, that they would move *ex parte* to compel.  (Yee Decl. ¶ 10.)

## III.  <u>ARGUMENT</u>

21  Just nine days remain before the close of document discovery on August 9.

22  (Dkt. 32.)  Starting on August 12, the parties will have one week to depose fact

23  witnesses.  (*Id.*)  To ensure adequate time to subpoena and secure the deposition

24  attendance of the CWs central to this dispute, and due to Plaintiff's persistent refusal

25  to disclose the CWs' identities, Defendants have been forced to file this *ex parte*

26  application seeking expedited relief.  *See* L.R. 7-19.

27  Plaintiff cannot willfully blind itself to the identities of its own CWs to evade

28  its basic discovery obligation to obtain and produce information within its custody,

possession, or control.  Plaintiff has now had the "report" from its investigator, dated May 25, 2024, for over two months—and well before it filed the Complaint. To now claim it does not know the CWs' identities means Plaintiff and its counsel have apparently done *nothing* in over two months to verify the CWs' information—or even to confirm who they are—despite having filed a verified Complaint and sought expedited consideration of their PI Motion.  Such reckless conduct, if true, would be staggering.

The Court should compel Plaintiff to obtain the CWs' identities from the professional investigation firm *Plaintiff hired* to source and interview them, and to disclose them before this weekend.  If Plaintiff claims that they never had, and cannot obtain even now, the names of the CWs on which Plaintiff's Complaint relies, then Defendants respectfully suggest that sanctions will be appropriate upon the Rule 11 review required by the PSLRA.

## A.  Defendants Are Entitled to Know the Identity of Confidential Witnesses at the Center of This Case

Having quoted CWs in its Complaint, Plaintiff must disclose their identities in discovery.  "The CWs unquestionably have relevant information, and defendants are entitled to question them about the basis for their statements, and to explore the circumstances surrounding the statements, the witnesses' motivation, their veracity, and even whether their statements were accurately related in the Complaint."  *In re Amgen Inc. Sec. Litig.*, 2013 WL 12139088, at *3 (C.D. Cal. Dec. 2, 2013); *see id.* (granting motion to compel CW identities because "identify[ing] those individuals whose information plaintiffs found significant enough to include in their Complaint …. is the very essence of the discovery process").

Courts routinely require plaintiffs in securities cases to disclose the identities of CWs quoted in the complaint.  "[I]t would be difficult or impossible to attack the pleadings without knowledge of the witnesses' identities.  Thus, it is essential that the witnesses' identities be discoverable." *In re Cooper Cos. Sec. Litig.*, 2008 WL

11588995, at *1 (C.D. Cal. Nov. 4, 2008); *see In re Bofi Holding, Inc. Sec. Litig.*, 2021 WL 3700749, at *4 (S.D. Cal. July 27, 2021) (granting motion to compel because "identities of the confidential witnesses are relevant"); *Schueneman v. Arena Pharms., Inc.*, 2017 WL 3118738, at *7 (S.D. Cal. July 21, 2017) ("It is both proper and common for a plaintiff to rely on CIs in a complaint, however, 'once the discovery phase begins, the balance of interests shifts.  The priority becomes reciprocal and robust fact-gathering as the parties seek to discover relevant evidence.'"); *see also Shenwick v. Twitter, Inc.*, 2018 WL 8244911, at *2 (N.D. Cal. Nov. 27, 2018) (granting motion to compel identities of CWs); *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 429 (N.D. Cal. 2007) (same).

### B.   <u>Masimo Must Disclose Information Within Its Possession, Custody, and Control</u>

The investigation into Mr. Koffey's alleged misconduct that allegedly yielded the two CWs quoted in the Complaint was "*Masimo*'s investigation," conducted "by a professional firm" hired by Masimo.  (Dkt. 1, Compl., ¶ 103; Dkt. 51 at 1-2.) Plaintiff admits that it has possession and control over the investigation's deliverable—"the investigator's report summarizing the conclusions of the investigator's work"—and produced it to Defendants upon execution of a protective order.  (*See* Dkt. 51 at 5; Dkt. 52; Yee Decl., Ex. D.)  There is no reason why Plaintiff could not obtain from the same investigator the names of the individuals identified through that investigation.

Under Federal Rule of Civil Procedure 34, "a party may request the production of documents 'which are in the possession, custody, or control of the party upon whom the request is served.'"  *Thales Avionics Inc. v. Matsushita Avionics Sys. Corp.*, 2006 WL 6534230, at *4 (C.D. Cal. Mar. 8, 2006) (Selna, J.). "[P]ossession, custody or control" covers not only "actual possession," but also the "legal right to obtain those documents or [exercise] control over them."  *Id.*; *see also United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452

(9th Cir. 1989) ("Control is defined as the legal right to obtain documents upon demand").

The standard for "control" is pragmatic and grounded in what a party realistically can obtain.  The inquiry is "firmly placed in reality," asking whether a party has "*actual* control" over documents and can practically obtain them.  *Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1453 (emphasis in original); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 530 (S.D.N.Y. 1996) ("Courts have also 'interpreted Rule 34 to require production if the party has the practical ability to obtain the documents from another.'").

Even if it lacks actual possession of the CWs' names, Masimo has the legal right and practical ability to obtain information and documents pertaining to its pre-litigation investigation, including those sufficient to identify the CWs relied upon in Plaintiff's own Complaint.  Its investigators served as its agents and produced information that Plaintiff deemed sufficient to support a verified Complaint. Plaintiff cannot use that information offensively—to obtain expedited discovery on its claims, to seek a preliminary injunction, and to attempt to survive a motion to dismiss—yet disclaim any ability to obtain or produce it upon Defendants' requests. *See Gerling Int'l Ins. v. Comm'r of Internal Revenue*, 839 F.2d 131, 141 (3d Cir. 1988) (citations omitted) (if an "agent[] can secure documents of the principal[] to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent[] to deny control for purposes of discovery by an opposing party").

The same is true if Plaintiff's counsel (but not Masimo itself) possesses or controls documents identifying the CWs.  "Because [Masimo] has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of [the company], such documents are clearly within [its] control." *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006).  Courts routinely

require parties to produce non-privileged documents within the control of their attorneys.  *See*, *e.g.*, *Bovarie v. Schwarzenegger*, 2011 WL 719206, at *4 (S.D. Cal. Feb. 22, 2011) (collecting cases); *Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013).

### C.   **If Plaintiff Truly Is Unable to Identify the Confidential Witnesses on Which Its Complaint Relies, Then It Violated Rule 11**

That Plaintiff's counsel apparently did not even speak with the CWs before quoting them in the Complaint—and claims that even now, it *cannot* obtain their names—is incompatible with Federal Rule of Civil Procedure 11.  Plaintiff had the investigator's report for seven weeks before filing the Complaint—ample time to investigate the report's assertions.  Those assertions reveal virtually nothing other than what is alleged at Paragraph 103 of the Complaint, which states:

> Masimo was recently informed through two confidential witnesses that Koffey has been "working closely" with lawyers at Wolf Haldenstein, the firm representing plaintiff in the Derivative Action.  Indeed, "one of the confidential witnesses reported that Koffey is "actually named as a defendant [in the Derivative Action], but he doesn't care. He will use whoever will get him to where he needs to go."

*See* Dkt. 1 ¶ 103; Declaration of Michael Swartz ¶¶ 4-6.

More than two additional weeks have now passed since the Complaint was filed.  By "presenting" the Complaint to the Court, as well as by "later advocating it," Plaintiff's counsel certified that it conducted "an inquiry reasonable under the circumstances" into its claims and factual contentions.  Fed. R. Civ. P. 11(b).  "The practice revealed by this case, in which plaintiffs' counsel makes literally no attempt to confirm the quotes of a witness on whom counsel proposes to rely in a public filing, sits at best uneasily alongside Federal Rule of Civil Procedure 11."  *In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918, at *11-12 (S.D.N.Y. May 29, 2015).

Courts routinely criticize, and even sanction, plaintiffs' counsel in securities cases for not verifying their factual allegations by speaking with CWs identified by investigators.  "[A]n investigator's memo of an initial witness interview is an

1  inadequate substitute for counsel's independent confirmation of accuracy."
2  *Millennial Media*, 2015 WL 3443918, at *12.  In *City of Livonia Emps.' Ret. Sys. v.*
3  *Boeing Co.*, the court imposed Rule 11 sanctions because the CW "should have been
4  interviewed before the complaint was filed"; the court criticized counsel's "'shoot
5  first, aim later' practice" and "blindly relying on the investigator's report."  306
6  F.R.D. 175, 181 (N.D. Ill. 2014).  Similarly, in *Bolling v. Gold*, the court was
7  "seriously troubled" that counsel did not "personally interview[] [the CW] to verify
8  the information provided by the investigator" and "never directly contacted
9  [the CW]."  2015 WL 6870617, at *6 (W.D. Wash. Nov. 9, 2015).  Likewise, in
10 *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, the court found it "disturbing" that
11 "no lawyer representing Plaintiff ever met with or interviewed" the CW and counsel
12 "decided to rely exclusively on its investigators … without further inquiry."  896 F.
13 Supp. 2d 1210, 1232 (N.D. Ga. 2012).
14      By claiming an inability to identify the CWs on which its Complaint relies,
15 Plaintiff effectively concedes a Rule 11 violation.  Due in significant part to the
16 dangers of unreliable CW allegations, the PSLRA mandates a Rule 11 inquiry at the
17 end of this case:  the Court "shall include in the record specific findings regarding
18 compliance by each party and each attorney … with each requirement of Rule
19 11(b)" and "shall impose sanctions" upon finding that Rule 11(b) was violated.  15
20 U.S.C. § 78u-4(c).  If Plaintiff truly cannot identify its own CWs, even as its counsel
21 has continued to advocate a signed, verified Complaint, Defendants respectfully
22 submit that sanctions will be appropriate.

23 **IV.   CONCLUSION**

24      Defendants respectfully request the Court grant their *ex parte* application and
25 enter an order compelling Plaintiff to disclose the identities of their CWs by Friday,
26 August 2 at 12 pm.

27

28

1   DATED:  July 31, 2024        Respectfully submitted,

2

3                                By:   _____
                                        /s/ *Bethany W. Kristovich*
4                                       BETHANY W. KRISTOVICH
                                        Attorneys for Defendants
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this memorandum of points and authorities contains 3,302 words, which complies with the word limit of L.R. 11-6.1.

DATED:  July 31, 2024

By:   /s/ *Bethany W. Kristovich*
BETHANY W. KRISTOVICH
Attorneys for Defendants